UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00596-GNS-CHL

RAMA ARLA and
MOHANA ARLA                                                              PLAINTIFFS

v.

PEERLESS INSURANCE COMPANY                                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Peerless Insurance Company's Motion for Summary Judgment (DN 33). For the following reasons, the motion is **GRANTED**.

### I.   BACKGROUND

Rama Arla and Mohana Arla ("Plaintiffs") acquired an insurance policy from Defendant Peerless Insurance Company ("Peerless") covering their home under construction at 8700 Rama Road, Prospect, Kentucky.  (Notice Removal Ex. A, ¶ 2, DN 1-2 [hereinafter Verified Compl.]). The property suffered a complete loss as the result of a fire that occurred when construction of the house was substantially, but not entirely, completed.  (Verified Compl. ¶ 2).  On July 1, 2015, Plaintiffs filed suit against Peerless in Jefferson Circuit Court alleging breach of contract and violation of Kentucky's Unfair Claims Settlement Practices Act ("KUCSPA"), KRS 304.12-230, including bad faith.  (Verified Compl. ¶¶ 3-4).  Plaintiffs acknowledged a payment by Peerless of $1,961,672.25, yet claimed they were owed the full $3-million policy limit.  (Verified Compl. ¶ 15).  Peerless removed the case to this Court.  (Notice of Removal, DN 1).  The Court

1

bifurcated the claims and stayed Plaintiffs' KUCSPA claim pending the resolution of the underlying breach of contract claim. (Order, DN 10).

Subsequently, Plaintiffs exercised their right to an appraisal proceeding under the policy and a dispute arose as to which calculation method was to be used in the appraisal proceedings. (Def.'s Mot. Summ. J. Ex. A, at 44, DN 32-4 [hereinafter Policy]). Plaintiffs moved for declaratory judgment in this Court and Peerless moved for summary judgment. The parties put forth conflicting methods for determining the amount owed for Plaintiffs' loss under the policy. Plaintiffs argued that the "estimated value" of the home should be measured by the expected value at completion based upon the market price of the home, less any depreciation. (Pls.' Mem. Supp. Mot. Dec. J. 5-9, DN 15-1). Peerless, citing the explicit valuation definition contained in the policy, insisted that the home should be valued using replacement cost value determined as the cost to construct the home without deduction for depreciation. (Def.'s Mem. Supp. Mot. Partial Summ. J. 7-10, DN 16-1). By Memorandum Opinion and Order entered April 13, 2016, the Court determined that the policy dictated that the value to be used in the coinsurance formula was the replacement cost as advocated by Peerless, not fair market value. (Mem. Op. & Order 6, DN 21).

The parties then resumed appraisal proceedings per the policy, which required their respective appraisers to select an independent umpire to determine the amount of the loss and the replacement cost value of the completed home had the fire not occurred.[1] (Policy 44). The parties' appraisers selected retired U.S. Magistrate Judge C. Cleveland Gambill to act as their umpire. (Def.'s Mot. Summ. J. Ex. D, DN 32-8). Judge Gambill met with the counsel and their

---

[1] The policy contains a coinsurance provision under which Peerless was required to pay a percentage of the loss in proportion to the amount of coverage divided by the replacement cost of the completed home. Counterintuitively, a higher estimated finished value would result in a lower amount of coverage. (Policy 44).

2

appraisers and set a schedule for an exchange of briefs. (Def.'s Mot. Summ. J. Ex. C, DN 32-5). With the agreement of the parties, Judge Gambill then heard from Plaintiffs, the builder, and the appraisers and discussed the differences in the appraisers' differing valuations of the property.

Plaintiffs' appraiser, Glenn Katz ("Katz"), opined that the amount of the loss was "approximately $6,500,000" and also found that the estimated replacement cost value at completion was $7,430,000. (Def.'s Mot. Summ. J. Ex. C, at 1-2; Def.'s Mot. Summ. J. Ex. B, at 3, DN 32-3). Peerless' independent appraiser, Dan Grecco ("Grecco"), opined that the amount of the loss was $7,304,470 and the estimated value of the home at the time of completion would have been $11,212,955.68. (Def.'s Mot. Summ. J. Ex. C, at 5). Both Katz and Grecco participated with Judge Gambill in the appraisal process. (Def.'s Mot. Summ. J. Ex. D). On the day of the appraisal hearing, Plaintiffs claim that Grecco opined that the replacement cost was actually $13,150,000. (Katz Aff. ¶ 2(g), DN 33-1).

In estimating the replacement cost at completion, Katz claims that Grecco did not alter his estimate to reflect changes Plaintiffs made from the original plans. (Katz Aff. ¶ 2(a)-(c)). Plaintiffs had apparently altered the original plans after becoming frustrated with four years of construction and omitted many of the amenities planned for the basement, including a bowling alley, wet bar, a full bath and a half bath, sauna, steam rooms, recreation room, theater room, and a dance hall with dance floor and stage, which was acknowledged by the builder, RTS Builders, LLC ("RTS"). (Katz Aff. ¶ 2(a)-(b)). Grecco did not include these changes in his appraisal estimates. (Katz Aff. ¶ 2(c)). Additionally, Plaintiffs allege that Grecco overstated the above-grade finished square footage of the house by approximately 4,000 square feet, which Peerless acknowledged at the appraisal hearing. (Katz Aff. ¶ 2(d)-(g)).

For the calculation of the amount of loss, Judge Gambill determined $7,303,740 as the amount of loss, adopting Grecco's figure. (Def.'s Mot. Summ. J. Ex. D). For the calculation of the replacement cost at the time of completion, Judge Gambill did not accept either appraisers' estimate, and found the amount to be $9,667,500. (Def.'s Mot. Summ. J. Ex. D). Under Judge Gambill's verdict, Peerless was required to pay an additional loss amount of $305,000, which was timely paid. (Def.'s Mot. Summ. J. Ex. D; Def.'s Mot. Summ. J. Ex. E, DN 32-9).

Peerless has moved for summary judgment on Plaintiffs' bad faith claim. In its motion, Peerless asserts that it is entitled to summary judgment because: (i) there is no bad faith when the policy was not breached; (ii) Peerless paid Plaintiffs pursuant to the terms of the policy; (iii) Peerless did not lack a reasonable basis in law or fact in denying Plaintiffs' claim because the claim was never denied; and (iv) there is a lack of evidence of malice or reckless disregard of Plaintiffs' right to recovery. (Def.'s Mem. Supp. Mot. Summ. J. 7-14, DN 32-1 [hereinafter Def.'s Mot. Summ. J.]).

## II. JURISDICTION

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden stating the basis for the motion and identifying evidence in the record that demonstrates an absence of any material factual dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the

existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. <u>DISCUSSION</u>

The foundation of the modern common-law bad faith action in Kentucky was laid out in *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993). The Kentucky Supreme Court set forth the three elements required to sustain a cause of action for bad faith against an insurer:

(1) the insurer must be obligated to pay the insured's claim under the terms of the policy;

(2) the insurer must lack a reasonable basis in law or fact for denying the claim; and,

(3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a base existed.

*Id*. at 890. The failure to show any one of the *Wittmer* elements eliminates Plaintiffs' bad faith claims as a matter of law. A plaintiff cannot bring a private cause of action "for a mere technical violation" of the KUCSPA. *Rawe v. Liberty Mut. Fire Ins. Co*., 462 F.3d 521, 526-27 (6th Cir.

2006). "[A] condition precedent to bringing a statutory bad faith action is that the claimant was damaged by reason of the violation of the statute." *Id*. (internal quotation marks omitted) (quoting *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997)). Therefore, before a cause of action will exist, it is necessary to find evidence that warrants punitive damages. *Wittmer*, 864 S.W.2d at 890; *see also Hollaway v. Direct Gen. Ins. Co. of Miss., Inc.*, 497 S.W.3d 733, 739 (Ky. 2016) (noting a bad faith claim in Kentucky is essentially a punitive action). The Sixth Circuit has described this prerequisite as a "high threshold standard that requires evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant by the insurance company that would support an award of punitive damages." *Phelps v. State Farm Mut. Auto. Ins. Co*., 736 F.3d 697, 703 (6th Cir. 2012) (internal quotation marks omitted) (citations omitted).

    **A.**    <u>**There is no dispute that Peerless was obligated to pay the insured's claim.**</u>

It is undisputed that Peerless was obligated to pay Plaintiffs' claim. Peerless contends that because it did pay Plaintiff's claim, there is no breach of the insurance contract and Plaintiffs' bad faith claim fails. (Def.'s Mot. Summ. J. 8). Peerless states that there is "no question" that it did not breach the policy, as it paid all amounts owed to Plaintiffs as soon as those amounts became owed. (Def.'s Mot. Summ. J. 8).

First, Peerless argues that the bad faith action must fail because it never denied Plaintiffs' claim. (Def.'s Reply Mot. Summ. J. 9, DN 34). The Court disagrees. The Kentucky Supreme Court has previously upheld a denial of summary judgment on bad faith claims where the insurance claims were not denied outright. *See Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375 (Ky. 2000). *See also Delamar v. Mogan*, No. 4:13-CV-00047-JHM, 2015 WL 225404, at *8 (W.D. Ky. Jan. 15, 2015) (denying summary judgment as to the bad faith claim when the

insurer did not deny the claim, but valued the loss payable at a low figure); *Ellis v. Arrowood Indem. Co.*, No. 12-140-ART, 2015 WL 2061936, at *5 (E.D. Ky. Apr. 30, 2015) ("An insurer can violate the [KUCSPA] without denying the claim."). Therefore, the fact that Peerless did not outright deny Plaintiffs' claim does not foreclose the possibility of success of Plaintiffs' bad faith claim.

Second, Peerless asserts that this Court's previous order regarding the valuation under the policy was a conclusive determination that Peerless did not breach the insurance contract. (Def.'s Mot. Summ. J. 9). The Court disagrees with this contention as well. The fact that Peerless advanced what the Court determined to be the correct valuation formula does not mean that Peerless could not have otherwise breached its obligations to its insured. Plaintiffs broadly asserted a breach of contract based on Peerless' failure to pay them the full amount owed, alleging in the Complaint: "[Peerless'] failure to make full payment under the policy to Plaintiffs for the loss and damages sustained is a breach of the terms of the [Peerless] Policy." (Verified Compl. ¶ 16). This Court's agreement with Peerless' valuation in its prior ruling does not absolutely foreclose any claim for bad faith Plaintiffs may have been able to prove. As discussed below, however, Peerless did have a reasonable basis for refusing to pay Plaintiffs the full amount they sought.

B. **Peerless had a reasonable basis for refusing to pay Plaintiffs.**

A bad faith claimant must be able to allege and prove that the insurer "lack[s] a reasonable basis in law or fact for denying the claim . . . ." *Wittmer*, 864 S.W.2d at 890. Plaintiffs argue that Peerless had no reasonable basis to refuse to pay Plaintiffs the additional sums that were owed under the policy. (Pls.' Resp. Def.'s Mot. Summ. J. 12, DN 33 [hereinafter Pls.' Resp.]). According to Plaintiffs, Peerless' calculation of its initial payment and the value proffered at the appraisal hearing "was unfounded, contrary to available evidence, without

7

reasonable basis, and contrary to its own investigation." (Pls.' Resp. 14). The Court does not agree.

As to Peerless' calculation of its initial payment to Plaintiffs of roughly $1.96 million, the Court finds that Peerless had a reasonable basis to pay this amount and deny Plaintiffs' demand for the policy limit of $3 million. After Peerless promptly paid Plaintiffs in accordance with its own assessment, Plaintiffs filed suit contending that they were owed the full policy amount. The parties filed cross-motions seeking this Court to determine which valuation method was correct under the policy, and the Court held that Peerless' valuation method was correct. (Mem. Op. & Order 6). Although it was later determined by Judge Gambill that Peerless was to pay Plaintiffs an additional $305,000, the fact that this Court held that Plaintiffs proffered valuation method was improper under the policy demonstrates that Peerless had a reasonable basis for denying Plaintiffs initial claim for $3 million.

Next, the Court concludes that Peerless had a reasonable basis for its valuation during the appraisal hearing. First, during the appraisal process there was no obligation for Peerless to pay Plaintiffs anything. Peerless argues that "Peerless refused to pay [Plaintiffs] until it was forced to pay them." (Pls.' Resp. 12). Under the express terms of the policy, however, payment is due only after the amount of loss has been agreed to or an appraisal award is filed. (Policy 44). Plaintiffs exercised their right to the appraisal proceedings under the policy, and thus, Peerless was not obligated to make a payment until the receipt of the umpire's verdict. *See Wellman v. Safeco Ins. Co. of Am.*, No. 14-166-HRW, 2017 WL 3097619, at *5 (E.D. Ky. July 20, 2017) ("To claim, as Plaintiffs do, that a 'delay' could occur before an insurer's obligation to pay even arises would violate Kentucky law."); *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) ("Absent a contractual obligation, there simply is no bad faith cause of action, either

8

at common law or by statute."). Peerless promptly paid Plaintiffs in accordance with Judge Gambill's decision, and thus fulfilled its obligation to Plaintiffs under the policy. (Def.'s Mot. Summ. J. Ex. E).

Further, the valuation of the replacement cost was reasonably debatable during the appraisal hearing. *See Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 889-90 (Ky. App. 1994) (noting that an insurer is entitled to challenge a claim through litigation if the claim is "fairly debatable"). Significantly, Judge Gambill accepted the amount of loss consistent with Peerless' appraisal. He further found that the replacement cost of the house was neither the amount proffered by Plaintiffs nor Peerless, but was closer to Peerless' appraiser's estimate than Plaintiffs'.[2] (Def.'s Mot. Summ. J. Ex. D). It is difficult for Plaintiffs to now argue Peerless' valuation was unreasonable where that estimate was significantly closer to the umpire's decision than their own figure.

Plaintiffs also make much of the fact that Grecco's calculation included the replacement cost of the original concept of the home, and not the "scaled down" plans for the home when it burned. (Pls.' Resp. 14). Plaintiffs aver that Grecco failed to reasonably investigate the claim, as this information was available to him through Plaintiffs, whom he failed to interview. However, Plaintiffs had informed Peerless shortly after the fire that all communications with them were to be made through their son-in-law and attorneys. (Def.'s Reply Mot. Summ. J. Ex. F, DN 34-1). Additionally, although Plaintiffs fault Grecco for not eliciting this information from RTS, it is undisputed that Plaintiffs also had pending litigation against the builder. The

---

[2] Peerless' appraiser estimated that the replacement cost of the finished home was $11,212,955.68. (Def.'s Mot. Summ. J. Ex. C, at 5). Plaintiff's appraiser estimated that the value was $7,430,000. (Def.'s Mot. Summ. J. Ex. B, at 3). The umpire's verdict indicated that the value of the finished home was of $9,667,500, roughly $650,000 closer to Peerless' appraiser than Plaintiffs'. (Def.'s Mot. Summ. J. Ex. D).

9

home burned to the ground which certainly would have hindered Grecco's ability to determine changes Plaintiffs may have made compared to the original plans. Plaintiffs fail to explain how not having this information rendered Grecco's valuation unreasonable when these facts were presented to Judge Gambill who still chose a valuation closer to that proffered by Grecco. (Def.'s Mot. Summ. J. Ex. D). Further, it was not unreasonable for Peerless to rely on an independent appraiser to value the home, especially where Plaintiffs point to no definitive proof of the value of the home before they brought this bad faith action or even prior to completion of the appraisal process. *Wittmer*, 864 S.W.2d at 892 (finding insurer has no duty to pay insured where prior to bringing bad faith claim insured had only presented unsubstantiated claims of the value of the cost of repair). Regardless of the aspersions Katz casts Grecco's way, Judge Gambill clearly found Grecco's opinions more credible than those offered by Katz. Thus, it appears that Katz is simply being a sore loser. His affidavit does nothing to bolster Plaintiffs' bad faith claim against Peerless.

Plaintiffs attack the cases cited by Peerless in support of its motion. Plaintiffs, however, did not cite any reported decisions which support their claim that Peerless committed bad faith by not paying them the amount ultimately determined through appraisal. *See Davidson*, 25 S.W.3d at 100 ("Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute."); *Sanders v. Motorists Mut. Ins. Co.*, No. 3:08-37-DCR, 2011 WL 221822, at *3 (E.D. Ky. Jan. 21, 2011) ("In other words, an insurer cannot be held liable for bad faith with respect to a claim it had no contractual obligation to pay. Thus, the existence of a contract (and breach of that contract) is a prerequisite to a statutory bad-faith claim." (internal citation omitted)). In sum, Plaintiffs have not proven that Peerless breached the terms of its policy, so their bad faith claim fails as a matter of law.

### C. There is no evidence that Peerless acted with malice or reckless disregard.

"A bad faith claim under Kentucky law is, essentially, a punitive action." *Hollaway*, 497 S.W.3d at 739. Therefore, to prevail on a bad faith claim, the insured must prove "that the insurers actions during resolution of the claim were outrageous," or the insurer acted with "reckless indifference to the rights of others." *Id*. (citing *Glass*, 996 S.W.2d at 452). Plaintiffs argue that this element can be proven because in this case "there are several pieces of evidence upon which a jury could decide Peerless lacked a reasonable basis to refuse to pay [Plaintiffs] and that it acted with malice or reckless disregard towards [Plaintiffs]." (Pl's Resp. Def.'s Mot. Summ. J. 15). Even viewing the evidence most favorable to them, Plaintiffs have proffered no evidence to support a finding that Peerless acted in reckless disregard to their rights. Although Plaintiffs allege that Grecco made various misstatements in his valuation estimate (i.e., miscalculations of square footage and funds owed to the contractor) the fact remains that Peerless honored the umpire's finding and timely paid what the umpire determined Plaintiffs were owed. *See United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003) ("Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown."); *Rawe*, 462 F.3d at 526-27 (holding that a plaintiff cannot bring a private cause of action "for a mere technical violation" of the KUCSPA without proof that would warrant punitive damages). Plaintiffs have not proffered evidence that would support a finding that would meet the "high threshold standard" under Kentucky law to maintain a bad faith claim. Thus, even if Plaintiffs had proven some technical violation of the policy, there is no evidence that Peerless' actions were outrageous or in reckless disregard of the Arlas' rights under the policy. *See Phelps*, 736 F.3d at 703.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 32) is **GRANTED**.

**Greg N. Stivers, Judge**
**United States District Court**
September 22, 2017

cc: counsel of record